777 So.2d 1118 (2001)
C.S. and J.C., Appellants,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
Nos. 4D00-576, 4D00-2171.
District Court of Appeal of Florida, Fourth District.
January 31, 2001.
Kathleen K. Pena, Fort Lauderdale, for appellants.
Robert A. Butterworth, Attorney General, Tallahassee, and Patrice Paldino, Assistant Attorney General, Children's Legal Services, Fort Lauderdale, for appellee.
SHAHOOD, J.
This opinion addresses consolidated appeals by the mother (J.C.) and father (C.S.) from orders entered by the trial court in dependency proceedings adjudicating the minor child of the parties (C.S.Jr.), dependent. We hold the trial court erred in adjudicating C.S. Jr. dependent as the parents' consents were not taken voluntarily, willingly and knowingly as required by Rule 8.325(c) of the Florida Rules of Juvenile Procedure.
In this case, a petition for adjudication of dependency and an amended three-count petition were filed by Department of Children and Families (DCF) in April 1997. The amended petition alleged as follows:

Count I
The child, [C.S., Jr.], is at substantial, imminent risk of abuse and/or neglect in that the child had not received the necessary *1119 medical care for his autism. The child, had been diagnosed with a pervasive development disorder and is mildly to moderately autistic. He has severe attention deficit disorder; extreme impulsiveness; poor speech (articulation) and deficient language skills and an intelligent quotient of 53-62. The child has not received consistent therapy or treatment for any of the above. Therefore, the minor child's physical, mental or emotional health cannot be assured.

Count II
The child, [C.S., Jr.], is at substantial, imminent risk of abuse and/or neglect in that his father, [C.S., Sr.], was incarcerated on a contempt of Court[1] and is unable to care for the minor child, [C.S., Jr.]. Said child is presently in the custody of the mother, [J.C.], who is mentally challenged and who is not capable of providing consistent care for the minor child. Therefore, the minor child's physical, mental or emotional health cannot be assured.

Count III
The child, [C.S., Jr.], is at substantial, imminent risk of abuse and/or neglect in that the minor child's sibling was adjudicated dependent based upon the father's neglect and abandonment of the minor child. Said father has been uncooperative with any services which were offered, resulting in Termination of Parental Rights for the said child. Based upon the above, child's physical, mental and emotional health are in danger of being significantly impaired. The father had been uncooperative with any services which were offered, resulting in a termination of parental right for that child.
The parents appeared before the court for arraignment on April 7, 1997. Each was represented by counsel. At the hearing, counsel for the mother stated that she was going to enter a consent to the petition for adjudication of dependency. Counsel for the father stated that he could not get the father to give him a position on the petition. Upon further inquiry by the court, denials were entered as to counts I and III and a consent as to count II. As such, the court entered an order memorializing what took place at the hearing.
At the September 17, 1997, adjudicatory hearing on the petition of dependency, count III was voluntarily dismissed. C.S., Sr.'s counsel objected to the court taking judicial notice of the father's consent to count II. The court ruled that it would not take judicial notice of the consent and that the father would have to defend on counts I and II.
At the November 10, 1999 pretrial conference, DCF moved to have the court adjudicate the minor child dependent based upon the parents' prior consents and stated that it was going to drop count I against the father. DCF stated that the child was doing very well and that his special needs were being met. At that time, the father attempted to withdraw his consent as to count II. The court held that the father did not follow the proper procedures to set aside his consent, and therefore, the consents of both the father and mother would remain in effect. Further, the court held that "the parents waived challenges to the consent pleas in this court" and that the matter would proceed to a case plan/disposition. The court also held if the parents wished to challenge procedural aspects, it must be done on the appellate level. Thereafter, the father filed a pro se motion to withdraw his consent and also moved through his court-appointed counsel for the appointment of an appellate attorney.
Subsequently, a disposition hearing was held on February 8, 2000. The court entered an order of disposition adjudicating the child dependent based upon the parents' prior consents. The court further entered an order finding that "the parents entered valid consents and that there is no good cause for them to withdraw their consents." "The parents may proceed to *1120 the appellate level with any issues they may have. The court finds the parents' rights have been preserved and properly defended throughout the process."
On appeal, the parents contend that the trial court failed to make the requisite findings under rule 8.325(c), Florida Rules of Juvenile Procedure, as to the voluntariness of their consents, whether they understood the nature of the allegations and the possible consequences by entering consents, and that it failed to incorporate such findings into the disposition order. We agree.
Rule 8.325(c), Florida Rules of Juvenile Procedure, provides the following regarding a parent's consent to dependency:
The parent or legal custodian may admit or consent to a finding of dependency. The court shall determine that any admission or consent to a finding of dependency is made voluntarily and with a full understanding of the nature of the allegations and the possible consequences of such admission or consent, and that the parent has been advised of the right to be represented by counsel. The court shall incorporate these findings into its order in addition to findings of fact specifying the act or acts causing dependency, by whom committed, and facts upon which the findings are based.
In In Interest of C.M., 632 So.2d 1093 (Fla. 1st DCA 1994), the First District reversed an adjudication of dependency holding that the trial court failed to find that the mother's stipulation to dependency, which she subsequently sought to withdraw, was knowingly and voluntarily made. The mother was not present at the adjudicatory hearing but her counsel orally stipulated to the dependency. At the disposition hearing which followed, the trial court failed to inquire of the mother who was in attendance, whether she knowingly and voluntarily agreed to the stipulation. The next day, she filed a motion to withdraw her stipulation. The trial court affirmed the adjudication. On appeal, the First District held that the trial court failed to make the necessary determination under rule 8.325(c), and that the mother's presence at the disposition hearing did not conclusively establish that the earlier stipulation was knowing and voluntary, nor did it relieve the trial court of its obligation to follow the rule. See id. at 1094.
In McKenzie v. Department of Health and Rehabilitative Services, 663 So.2d 682 (Fla. 5th DCA 1995), the Fifth District reversed an adjudication of dependency where no findings of fact were contained in the order. In that case, the court held that the mother's waiver of her right to counsel at arraignment was not freely, voluntarily and intelligently made where she displayed hesitation and confusion when entering her consent to the petition and where she twice requested an attorney during the arraignment because she did not understand the proceedings. The court held that when a parent requests an attorney and states that she does not understand the proceedings, the trial court must stop the inquiry as to consent and an attorney should be appointed. See id. at 683. More importantly, HRS conceded that the order of adjudication did not contain specific facts supporting the order under rule 8.325(c). Since no findings of fact were contained in the order, the matter was reversed and remanded for further proceedings. See id. at 684; See also In Interest of J.J.K., 716 So.2d 331 (Fla. 2d DCA 1998)(trial court failed to determine whether mother's waiver of counsel was made knowingly, intelligently and voluntarily, in light of the mother's limited education and history of mental instability.).
Likewise, in In Interest of S.H., 642 So.2d 809, 810 (Fla. 2d DCA 1994), an order of adjudication of dependency was reversed where the court never obtained a waiver of counsel on the record from either parent and where the court never determined that the father's consent was voluntary and with a full understanding of the possible consequences of the consent as required by rule 8.325(c). See also P.B v. Dep't of Children and Family Servs., *1121 709 So.2d 590 (Fla. 4th DCA 1998)(parents failed to establish that they did not understand that they were agreeing to adjudication of dependency, that they were unaware that one possible consequence of the dependency determination was the loss of the custody of their child, and that their consent was not voluntary and knowing, and thus did not show good cause to withdraw consent to dependency).
In this case, at no time did the trial court determine that the consent of the mother was given in accordance with rule 8.325(c). While she was represented by counsel, at the start of the hearing, counsel for the mother merely stated: "Yes, she's received the petition, Judge. We've reviewed the petition, and she's going to enter a consent at this time." The court made absolutely no inquiry or findings as to the voluntariness of her plea, her understanding of the allegations or the possible consequences of her consent to dependency. This inquiry should have been further heightened based on the fact that the mother's mental abilities were low functioning. In fact, count II of the petition alleged that the child was at risk because the father was incarcerated on a contempt of court and was unable to care for the child, and that the mother, who is mentally challenged, was not capable of providing consistent care for the minor child. This fact is buttressed by the pre-dispositional report filed by DCF on December 2, 1999, which stated that the "mother is mentally retarded and is not able to care for [the child]." Also at the April 7, 1997 hearing, counsel for the mother told the court that the mother did not think she was capable of continuing to care for her son and that she had not been her own payee for her social security check in over 15 years because she was not capable of managing her money and bills. The father had been the payee, and when he was incarcerated, there was no one to take care of their son.
As to the father, it is clear that he did not understand the petition. At the hearing, counsel for the father could not enter a plea for the father on the petition because he could not obtain a position on the counts from him. The court then inquired as to the father's position. Initially, the father denied count I, stating that the child was in school and receiving services. As to count II, the father was incarcerated and did not believe he was neglecting his child. He stated that he could take care of his son if he were out of jail because the mother was not capable of continuing the care without help. The judge stated that "[u]nder the law, sir, incarceration is abandonment. That if something has been done that leads to incarceration, that is a legal abandonment in the eyes of the law." The father responded by stating that "[i]f you're saying that me being in jail is abandonment under the law, I guess I can't deny that because I'm in jail."
After the father stated that he did not understand count III, and did not understand the petition, the court stated that it was going to enter denials as to all counts. The court then explained that the dependency hearing involved the placement and custody of his son and the ability to get him the services he needed. The father stated: "I'm all for that then." The court then stated:
The Court: If he is adjudicated dependent, sir, then he is entitled to the full protection and jurisdiction of the Court and the Court can order certain things be done for him. That's what being a dependent means. It is towards the child as far as what the child is entitled to. You can consent to the dependency, which is what [J.C.] has done, saying that yes, I want these services for my son; saying that yes, I want him to have the jurisdiction and protection of the Court. You can admit that what is said in the petition is correct. That's not what she's doing. She is just consenting. She's saying "I thinkI don't care what the petition says. All I know is that I want my son to have the services, intervention and protection from the Court and I am *1122 willing to do these tasks in my son's best interest."
Or you can deny the petition and say "no. That what is written is not true. I do not want the child to be adjudicated dependent. I do not want the child under the jurisdiction of the Court. I do not want the services." If that's the circumstance, then I set the case for trial and the matter is heard, and then I make a determination as to whether or not the child is dependent and entitled to the jurisdiction and protection of the Court or not dependent.
The father again hesitated about count II: "Okay. You're sayingOkay. You said as far as me being in jail, that is abandonment and everything... and that's what this petition is saying that I abandoned him." "If I feel that it wasn't myWell, I guess that's what it is if I'mWhat is No. 3 again? Because I didn't understand No. 3." Because the father did not understand count III, the court then explained the allegations in the petition. The father again asked about count I. As a result, the court stated that the father was denying counts I and III and "consent as to Count 2 which is the incarceration." Clearly, the father never expressly gave his consent to count II.
The April 7, 1997 order states only that "the mother consents to the petition for adjudication of dependency" and "the father denies counts I and III but consents to count II." It made no findings in accordance with rule 8.325(c). The February 8, 2000 Order of Disposition merely adjudicated the child dependent based on the parents' prior consents. Like McKenzie, since the record and order failed to set forth any findings that the consents were knowingly and voluntarily given as is required under rule 8.325(c), this matter must be reversed and remanded for further proceedings.
Because we are reversing and remanding on the issue of the parents' consents, we decline to address any other issues raised by appellants.
REVERSED AND REMANDED.
STONE and HAZOURI, JJ., concur.
NOTES
[1] The father was ordered to serve a 179-day sentence for contempt of court.